MEMORANDUM OPINION AND ORDER
 

 De MENT, District Judge.
 

 Before the court is the defendant Countrywide Funding Corporation’s (hereafter “Countrywide”) motion filed March 22, 1996, for rehearing of Countrywide’s motion to dismiss Counts II, III, IV and V of the complaint. The court construes said motion as a motion for reconsideration. The plaintiff responded in opposition on April 11, 1996. Thereafter, on April 26, 1996, Countrywide replied to the plaintiffs response. After careful consideration of the relevant case law, the arguments of counsel, and the record as a whole, the court finds that Countrywide’s motion is due to be granted.
 

 ' FACTS
 

 Complete findings of fact are contained in
 
 Briggs I,
 
 which the court herein incorporates by reference. The court need not repeat its previous findings but will instead briefly summarize the issue presently before the court.
 

 The plaintiffs bring this action asserting that so-called “yield spread premium” payments made to home mortgage brokers by Countrywide are illegal under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601
 
 et seq.
 
 (“RESPA”) and Alabama common law. This ease is one of several challenging the industry wide practice of paying yield spread premiums.
 
 [1]
 
 Countrywide filed a motion to dismiss on- August 21, 1995, concerning the Alabama common law claims. In the court’s Órder-entered on March 8, 1996, the court denied Countrywide’s motion to dismiss Counts II through V of the plaintiffs complaint. Countrywide’s motion was based upon § 5-19-6 of the
 
 Code of Alabama,
 
 which operates to eliminate the plaintiffs state law claims that are based on alleged nondisclosures regarding payments made by Countrywide to the mortgage broker in connection with their mortgage loan. The court’s' denial of Countrywide’s motion was based on its conclusion that federal law— specifically, RE SPA preempts the Alabama statute, and thus the plaintiffs’ state common law claims were revived and apply here.
 

 DISCUSSION
 

 Countrywide essentially argues that RES-PA’s narrow preemption provision does not apply to Ala.Code § 5-19-6, and therefore, the plaintiffs state common law claims for fraud, intentional interference with contractual relationships and inducement of breach of a fiduciary duty must fail.
 
 See Briggs v. Countrywide Funding Corp., et al.,
 
 931 F.Supp. 1545, 1549-50 (M.D.Ala.1996) (hereafter
 
 Briggs I)
 
 RESPA expressly provides for only limited preemption of state law, re
 
 *814
 
 quiring that the state law be “inconsistent” with it:
 

 This chapter does not annul, alter, or affect ... the laws of any State with respect to settlement practices; except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency.
 

 12 U.S.C. § 2616.
 

 The Supreme Court of the United States has emphasized repeatedly that there is a strong presumption against finding that state law is preempted by federal law.
 
 Hawaiian Airlines, Inc. v. Norris,
 
 512 U.S. 246, 251-52, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994);
 
 Cipollone v. Liggett Group, Inc.,
 
 505 U.S. 504, 523, 112 S.Ct. 2608, 2621, 120 L.Ed.2d 407 (1992). The question is one of Congress’s intent, and where that intent has been expressly stated in a statutory provision which deals with preemption, the scope of preemption should be limited to that which the statute actually requires by its terms.
 
 Id.; California Fed. Sav. & Loan Ass’n v. Guerra,
 
 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987).
 

 In the context of a narrow preemption provision which strikes only state law which is “inconsistent,” the state law must actually interfere with the operation of federal law for it to become preempted — a state law is not preempted merely because it is different from the federal law.
 
 Guerra,
 
 479 U.S. at 288-92, 107 S.Ct. at 693-95 (laws granting special treatment to pregnant women not preempted by Title VII prohibition of pregnancy discrimination);
 
 Cipollone v. Liggett Group, Inc.,
 
 505 U.S. at 523, 112 S.Ct. at 2621. Thus, the Alabama statute is not preempted merely because it and RE SPA both have something to say about disclosure in connection with mortgage loan transactions.
 
 See, e.g., Freightliner Corp. v. Myrick,
 
 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (federal truck safety standards do not preempt Georgia common law tort claims);
 
 CSX Transp., Inc. v. Easterwood,
 
 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (federal railroad regulations preempt some, but not all, Georgia negligence claims);
 
 Cipollone v. Liggett Group, Inc.,
 
 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (federal cigarette labeling act preempts some, but not all, New Jersey statutory and common law claims).
 

 Upon reconsideration, the court now finds that RE SPA and the Alabama statute are not “inconsistent” — the Alabama statute does not in any way affect or interfere with RESPA’s operation. First, the Alabama statute is not inconsistent with RESPA’s disclosure requirements because the Alabama statute regulates something different— whether an Alabama lender needs to disclose more than what RESPA requires about premiums as a matter of Alabama law. The Alabama statute merely states that lenders are under “no obligation or duty under this chapter” to make disclosures concerning premium payments. The statute “explicitly reversed” the earlier ruling of the Alabama Supreme Court in
 
 Smith v. First Family Financial Services, Inc.,
 
 626 So.2d 1266 (Ala.1993), which had held to the contrary.
 

 In fact, the Alabama statute cannot be in conflict with RESPA’s disclosure rules because it is not an affirmative rule of disclosure. Instead, the statute reflects the State of Alabama’s policy that it is choosing not to regulate in this area of disclosure. See Ala. Code § 5-19-6(c). As the court recognized in
 
 Briggs I,
 
 the preamble to the statute made clear the Legislature’s intent that the “comprehensive system” of federal law was “adequate,” and would govern.
 
 See
 
 Ala.Acts. 1994, 94-115 § 1(5). Thus, Alabama has left the regulation of yield spread premiums entirely to RESPA. There is no conflict between state and federal law in an area where federal law regulates and state law does not.
 

 Second, the court finds that there similarly is no inconsistency between the Alabama statute and RESPA’s substantive prohibition of referral or unearned fees. Again, the Alabama statute does not address federal law, or interfere with it. RESPA’s substantive rules limit what payments can be made in connection with the transaction by parties other than the consumer, while Alabama’s statute deals only with the disclosures required under Alabama law. Ala.Code § 5-19-6(c) (“there is no obligation or duty under
 
 *815
 
 this chapter to disclose”); § 2607(a) (“No person shall give ... any fee ...”)• Based on the foregoing, the court finds that Ala.Code § 5-19-6 is not preempted by RESPA. Consequently, the plaintiffs’ common law state claims asserted against Countrywide are due to be dismissed. In addition, the plaintiffs’ RICO claim asserted against Countrywide is due to be dismissed because it is based upon state fraud allegations. 12 U.S.C.
 

 CONCLUSION
 

 For the foregoing reasons, it is CONSIDERED and ORDERED that the Order entered by this court on March 8,1996, denying Countrywide Funding Corporation’s motion to dismiss, be and the same is hereby VACATED.
 

 It is further CONSIDERED and ORDERED that Countrywide Funding Corporation’s motion to dismiss the claims asserted against it in Counts II, III, IV and V of the complaint be and the same is hereby GRANTED.
 

 [1]
 

 . The following are similar pending cases:
 
 Grant
 
 v.
 
 Innovative Mortgage Co., C.A.
 
 No. CV-94-T-1599-N (M.D.Ala.);
 
 Millis v. Quality Mortgage USA, Inc.,
 
 C.A. No. CV-94-T-1370-N (M.D.Ala.);
 
 Washington v. Equicredit Corp. of Georgia,
 
 C.A. No. 1-96-CV-0398 (N.D.Ga.);
 
 McDermott v. Mercury Capital Services, Inc., et al.,
 
 No. 1-94-CV-1524-MHS (N.D.Ga.).